

**IT IS ORDERED as set forth below:**

**Date: March 18, 2019**

_____
**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| IVAN GOINS and GABRIELLA ELISABETH GIBBS, | CASE NO. 13-70835-BEM |
| Debtor. | CHAPTER 7 |
| NEIL C. GORDON, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 17-5255-BEM |
| MCGHEE AUTO SALES, INCORPORATED, | |
| Defendant. | |

**O R D E R**

This matter is before the Court on Plaintiff's *Motion for Summary Judgment* (the "Motion"). [Doc. 11]. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O),

and the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).[1] This proceeding arises out of Debtors' alleged unauthorized use of funds from the settlement of a postpetition personal injury claim to purchase vehicles from Defendant as gifts for Debtors' children and grandchildren.

Plaintiff, the Chapter 7 Trustee, filed a complaint seeking to avoid the unauthorized postpetition transfers, to recover the value of the transfers from Defendant, to preserve the transfers for the estate, and to obtain turnover of the funds. Plaintiff filed his complaint (the "Complaint") on October 12, 2017. [Doc. 1]. Defendant filed an Answer (the "Answer") on November 13, 2017. [Doc. 4]. Plaintiff's Motion includes a *Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried* (the "SMF"). [Doc. 12]. Defendant filed a *Response to Trustee's Motion for Summary Judgment* (the "Response" or "Resp."), including an *Affidavit of Clifford McGhee, CEO of McGhee Auto Sales* (the "McGhee Aff.") [Doc. 15].

**I. Summary Judgment Standard**

Summary judgment is governed by Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Id.*

---

[1] In its Answer, Defendant stated that it "does not consent to the entry of any final orders or judgment by this Court." [Doc. 4 ¶ 1]. However, because Plaintiff's claims are core proceedings arising under the Bankruptcy Code, the Court is authorized to enter final orders and does not require the parties' consent to do so. 28 U.S.C. § 157(b)(1); *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015).

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510 (citations omitted). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, … or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Material facts contained in the moving party's statement of material facts that are not specifically controverted by the nonmoving party will be deemed admitted. BLR N.D. Ga. 7056-1(a)(2).

**II. Material Facts Not in Dispute**

Debtors Ivan Goins and Gabriella Gibbs filed a Chapter 13 petition on September 24, 2013. [Complaint ¶ 7; Answer ¶ 3; SMF ¶ 1]. The Court entered an order confirming their Chapter 13 plan on April 14, 2014. [Complaint ¶ 8, Answer ¶ 4; SMF ¶ 2]. The plan provided no dividend to general unsecured creditors. [*Id.*]. On December 11, 2015, the Chapter 13 Trustee filed a motion to dismiss the bankruptcy case for failure to make plan payments. [Complaint ¶ 9; Answer ¶ 5; SMF ¶ 3]. On April 13, 2016, the Court entered an order converting the case to Chapter 7, at which time Plaintiff was appointed as Chapter 7 Trustee. [Complaint ¶ 10; Answer ¶ 6; SMF ¶ 4].

At the second reset meeting of creditors, held on July 11, 2016, Debtors testified that on October 6, 2014, they were both injured in an automobile accident. [Complaint ¶ 14; SMF ¶ 7; Resp. at 4]. A year after the accident, Debtors received a settlement of $500,000 (the "Settlement"). [Complaint ¶ 14; SMF ¶ 8; Resp. at 4]. Debtors never amended their sworn statements to disclose the personal injury claim or their sworn schedules to schedule the Settlement. [Complaint ¶ 15; SMF ¶ 9; Resp. at 4]. Debtors testified that approximately $250,000 went to legal fees, expenses, and medical costs. [Complaint ¶ 15; SMF ¶ 10; Resp. at 4]. On October 17, 2015, Debtors deposited $286,971.37 (the "Remaining Settlement Funds") in their joint bank account. [Complaint ¶ 16; SMF ¶ 11]. When questioned by Plaintiff, Debtors testified that they only had about $20,000 of the Remaining Settlement Funds. [Complaint ¶ 17; SMF ¶ 12].

Plaintiff directed Debtors to immediately turn over those funds to him. [Complaint ¶ 17; SMF ¶ 13]. To date, Debtors have turned over $16,000 in cash, plus the Chapter 13 Trustee returned $3,161.18. [Complaint ¶ 17; SMF ¶ 14]. Debtors further testified that their children and grandchildren all received gifts from the Remaining Settlement Funds. [Complaint ¶ 18; SMF ¶ 15]. Debtors have six children between the ages of 23 and 34, all of whom received between $10,000 and $20,000 as gifts. [Id.]. Some of the gifts were used Mercedes-Benz vehicles purchased from Defendant. [SMF ¶ 15; McGhee Aff. ¶ 12-13, 21]. Defendant is a used car dealer. [Complaint ¶ 13; Answer ¶ 9; SMF ¶ 16]. Clifford McGhee has owned and operated Defendant for more than 40 years. [McGhee Aff. ¶ 3].

To resolve discharge issues raised by Plaintiff, Debtors signed a waiver of discharge, which was approved by the Court. [Complaint ¶ 19-21; SMF ¶ 17-19]. Debtor Ivan

4

Goins became ill following conversion of the case and passed away on February 7, 2017. [Complaint ¶ 22; SMF ¶ 20].

In October 2015, Mr. Goins presented to Mr. McGhee either a copy of a settlement check or a deposit slip for funds he had received from the personal injury claim. [McGhee Aff. ¶ 6]. On October 24, 2015, Mr. Goins appeared at Defendant's Covington Highway location seeking to purchase vehicles for his family members in a cash transaction to be paid by personal check. [McGhee Aff. ¶ 7, 9, 12]. Defendant's staff executed documents indicating the vehicles to be sold, which effectively removed those vehicles from Defendant's active inventory. [McGhee Aff. ¶ 10, 11]. Mr. McGhee informed Mr. Goins that once the personal check cleared, he could take delivery of the vehicles. [McGhee Aff. ¶ 14]. Based on the information provided to Mr. McGhee by Mr. Goins, Mr. McGhee believed Mr. Goins to be solvent. [McGhee Aff. ¶ 15]. Mr. McGhee did not conduct a credit check because it was a cash transaction. [McGhee Aff. ¶ 16]. The transaction was a typical cash transaction not unlike hundreds Mr. McGhee has participated in over 40 years. [McGhee Aff. ¶ 17]. Mr. Goins did not disclose to Mr. McGhee that Debtors were in bankruptcy, and there were no indications that Debtors should be treated differently than any other cash buyer. [McGhee Aff. ¶ 18]. Four subsequent transfers occurred in a similar manner, except that Debtor Gabriella Gibbs asked to be listed as a lienholder on certain vehicles. [McGhee Aff. ¶ 22, 23].

Debtors made the following transfers (collectively, the "Transfers") postpetition and without bankruptcy court approval to Defendant for the purchase of vehicles for Debtors' adult sons:

- On or about October 26, 2015, Debtors transferred $57,801 (the "First Transfer") to Defendant for the purchase of three 2008 Mercedes-Benz vehicles and one 2009 Mercedes-Benz vehicle. [Complaint ¶ 23; Answer ¶ 19; SMF ¶ 21; McGhee Aff. ¶ 12 & Ex. B].

5

- On December 5, 2015, Debtors transferred $14,772.50 (the "Second Transfer") to Defendant for the purchase of a 2008 Mercedes Benz C300. [Complaint ¶ 24; Answer ¶ 20; SMF ¶ 22; McGhee Aff. Ex. B].

- On January 15, 2016, Debtors transferred $10,608.50 (the "Third Transfer") to Defendant for the purchase of a 2008 Chevrolet Equinox. [Complaint ¶ 25; Answer ¶ 21; SMF ¶ 23; McGhee Aff. Ex. B].

- On January 22, 2016, Debtors transferred $13,394 (the "Fourth Transfer") to Defendant for the purchase of a 2008 Mercedes-Benz C300. [Complaint ¶ 26; Answer ¶ 22; SMF ¶ 24; McGhee Aff. Ex. B].

- On February 27, 2016, Debtors transferred $26,431.50 (the "Fifth Transfer") to Defendant for the purchase of a 2006 Mercedes-Benz vehicle, a Chevrolet G2500 van, and a 2005 Toyota Avalon. [Complaint ¶ 27; Answer ¶ 23; SMF ¶ 25; McGhee Aff. Ex. B].

Defendant received a total of $123,007.50 from Debtors postpetition. [SMF ¶ 26; McGhee Aff., Ex. B]. On August 27, 2017, Plaintiff made demand by certified mail on Defendant for the amount of the First Transfer. [Complaint ¶ 28; Answer ¶ 24]. Upon further investigation, Plaintiff identified an additional four transfers to Defendant. [Id.] Defendant, through its attorney, responded on September 19, 2017 and denied responsibility. [Complaint ¶ 29; Answer ¶ 25].

Defendant's Response to the Motion includes a *Statement That There Are Material Facts to Be Determined by a Jury*. [Resp. at 4]. The disputed facts identified by Defendant are as follows:

(1) Whether the personal injury settlement check made payable to Debtors and their attorneys is the "initial transfer" of postpetition assets of the estate? [Resp. at 4]. Defendant asserts that "The facts of this case indicate that a personal injury check was tendered, deposited and disbursed post-petition by attorneys without prior appointment of the U.S. Bankruptcy Court." [Id.] The Court takes judicial notice that the Court approved Plaintiff's motion to enter

6

into a settlement agreement with the law firm that handled Debtors' personal injury claim, Montlick & Associates ("Montlick"), to approve Montlick's employment, approve the personal injury settlement, and to recover a portion of Montlick's fees. [Case No. 13-70835, Docs. 147, 150]. The motion to settle indicated that Montlick received the settlement proceeds and then disbursed the funds to Debtors and to itself for its attorney fees. [Id. Doc. 147 at 2]. Defendant has not shown any dispute about the underlying facts of disbursement of the settlement proceeds—i.e., that the proceeds were initially transferred to Montlick, which then disbursed a portion of the proceeds to Debtors, who in turn transferred part of the proceeds to Defendant. Whether these facts establish that Defendant is not the initial transferee is a question of law.

(2) In an action to avoid and recover postpetition transfers, are the limitations to Plaintiff's recovery efforts pursuant to § 550(a)(2) applicable to Defendant as a subsequent transferee? [Resp. at 5]. Again, this goes to whether Defendant is an initial or subsequent transferee and whether Defendant is therefore entitled to a "good-faith" defense to Plaintiff's recovery of the Transfers. [*See infra* Part III.B]. As Defendant contends, there is no dispute that Defendant provided vehicles in exchange for the funds paid by Debtors. Nor is there any dispute for purposes of this Motion that Debtors paid in cash, and Defendant was unaware of their pending bankruptcy case. Whether these facts establish Defendant as a subsequent transferee with a good-faith defense is a question of law.

(3) Is the entry of a default judgment in Adversary Proceeding No. 17-5257-BEM on June 7, 2018, a "satisfaction" pursuant to 11 U.S.C. § 550(d)? [Resp. at 6]. As explained further below, the *judgment* is not a satisfaction, but any funds Plaintiff recovered based on the judgment may constitute a full or partial satisfaction of unauthorized transfers.

7

**III. Legal Analysis**

Plaintiff's Complaint consists of four counts, and Plaintiff seeks summary judgment on all for counts: Count I: Avoidance of Unauthorized Postpetition Transfers Pursuant to 11 U.S.C. § 549; Count II: Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550; Count III: Preservation of the Avoided Transfers Pursuant to 11 U.S.C. § 551; and Count IV: Turnover Pursuant to 11 U.S.C. § 542(a).

**A. Avoidance of Unauthorized Postpetition Transfers of Estate Property**

Avoidance of postpetition transfers of estate property is governed by 11 U.S.C. § 549, which provides in relevant part as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>     (1) that occurs after the commencement of the case; and
>     (2)   (A) that is authorized only under section 303(f) or 542(c) of this title; or
>            (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). To establish that the Transfers are avoidable as a matter of law under § 549, Plaintiff must show "(1) a post-petition transfer (2) of estate property (3) which was not authorized by the Bankruptcy Code or the court." *Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1258 (11th Cir. 2010). In addition, the transfer must have occurred within two years of the date of the commencement of the adversary proceeding. 11 U.S.C. § 549(d)(1).

The car accident giving rise to the settlement, the settlement, and all the Transfers occurred between October 6, 2014 and February 27, 2016. Debtors' bankruptcy case was filed under Chapter 13 on September 24, 2013, and their plan was confirmed on April 14, 2014. The case remained under Chapter 13 until it was converted to Chapter 7 on April 13, 2016. Thus, all

8

the Transfers occurred while Debtors' case was pending in Chapter 13. Furthermore, the First Transfer occurred on October 26, 2015, less than two years prior to the October 12, 2017 filing of the Complaint.

The property at issue was the proceeds of a post-confirmation personal injury claim. Under 11 U.S.C. § 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." In addition, in Chapter 13, property of the estate includes all property of the kind specified in § 541 "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to case under chapter 7 …." *Id.* § 1306(a)(1). Upon confirmation of the Chapter 13 plan, property of the estate is vested in the debtor unless the plan or confirmation order provides otherwise[2] and to the extent it is not necessary to fulfill the plan. *Id.* § 1327(b); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000). Property acquired post-confirmation becomes property of the estate and does not revest under § 1327(b). *In re Waldron*, 536 F.3d 1239, 1243 (11th Cir. 2008). Thus, the settlement proceeds became property of the estate and remained so until the case was converted, and the Transfers constitute postpetition transfers of property of the estate. *See* 11 U.S.C. § 348(f).

The Court takes judicial notice that the docket in the bankruptcy case does not reflect that Debtors requested permission to make the Transfers and the Court did not enter any orders authorizing the Transfers. Furthermore, nothing in the Bankruptcy Code authorizes such transfers. *See* 11 U.S.C. §§ 363, 1303.

---

[2] The Court takes judicial notice of the fact that the confirmation order provided that property would not revest in Debtors until the earlier of discharge, dismissal of the case, or closure of the case without discharge. Similarly, the plan provided that property would not revest in Debtors until the earlier of discharge or dismissal of the case. [Case No. 13-70835, Docs. 33, 36].

9

Defendant concedes in its Response that Plaintiff has correctly set forth the law under § 549(a) and that none of the statutory exceptions to § 549 apply to Defendant.[3] [Doc. 15 at 9]. Nevertheless, Defendant describes Plaintiff as using his strong-arm powers and contends that Plaintiff must allege that Debtors were insolvent on the date of the transfers or became insolvent as a result of the transfers. However, insolvency is not an element of a cause of action under § 549,[4] and Plaintiff's failure to establish insolvency does not affect the outcome.

Based on the foregoing, Plaintiff has established as a matter of law that the Transfers are avoidable pursuant to 11 U.S.C. § 549(a) because they were transfers of estate property, made postpetition, and made without authorization. Therefore, Plaintiff is entitled to summary judgment on Count I of the Complaint.

### B. Recovery of the Transfers

Once the trustee has established that a transfer is avoidable, Section 550 provides for liability for the avoided transfer as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> > (2) any immediate or mediate transferee of such initial transferee.
> 
> (b) The trustee may not recover under [sub]section (a)(2) of this section from—
> > (1) a transferee that takes for value, ... in good faith, and without knowledge of the voidability of the transfer avoided; or

---

[3] The exceptions apply to certain transfers in involuntary bankruptcy cases and to certain transfers of real property. 11 U.S.C. § 549(b), (c).

[4] Insolvency is an element of claims for preferential and fraudulent transfers. 11 U.S.C. §§ 547(b)(3), 548(a)(1)(B)(ii)(I); O.C.G.A. §§ 18-2-74(b)(9), 18-2-75(a), (b). Plaintiff has made no such claims in this proceeding. Furthermore, the trustee's strong-arm power arises from 11 U.S.C. § 544, which also is not at issue in this proceeding.

> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(a), (b).

Thus, a transfer avoided under § 549(a) may be recovered from the initial or a subsequent transferee. 11 U.S.C. § 550(a). In the 11th Circuit, the initial transferee excludes those who "did not have control over the assets received, i.e., ... they merely served as a conduit for the assets that were under the actual control of the debtor-transferor *and* ... acted in good faith and as an innocent participant" in the transfer. *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1323 (11th Cir. 2010) (emphasis in original). Subsequent transferees also have a "good-faith" defense set out in the statute. Subsequent transferees are protected if they take for value, in good faith, and without knowledge that the transfer is avoidable. 11 U.S.C. § 550(b). The burden is on Defendant to establish the "good faith" defense. *Bakst v. Sawran (In re Sawarn)*, 359 B.R. 348, 354 (Bankr. S.D. Fla. 2007); *accord Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 595 n.15 (11th Cir. 1990) (creditor has burden of proving affirmative defenses to avoidability of transfers under § 547).

There is no dispute that Debtors transferred the settlement proceeds to Defendant in exchange for vehicles. As explained above, the Trustee has demonstrated the Transfers are avoidable. However, Defendant argues that Montlick was the initial transferee of the settlement proceeds, and Defendant is a subsequent transferee. Defendant further argues that it meets the elements of the good faith defense under § 550(b) because the Transfers were conducted at arm's length, for reasonably equivalent value, and Defendant was unaware of Debtors' bankruptcy.

Defendant has not shown that it is a subsequent transferee. There is no dispute that the initial recipient of the settlement proceeds was Montlick. However, under the Georgia Rules of Professional Conduct, an attorney has no control over client funds. Ga. R. Prof. Conduct

11

1.15(I)(c) ("[A] lawyer shall promptly deliver to the client ... any funds or other property that the client ... is entitled to receive and, upon request by the client ... shall promptly render a full accounting regarding such property.") Thus, an attorney in possession of settlement proceeds is generally regarded as a mere conduit, in the absence of evidence to the contrary. *Harwell*, 628 F.3d at 1324 ("In the vast majority of cases, a client's settlement funds transferred in and out of a lawyer's trust account will be just like bank transfers, and lawyers as intermediaries will be entitled to mere conduit status because they lack control over the funds."). Because the record contains no evidence that Montlick exercised control over the funds that were ultimately transferred to Defendant[5] or that Montlick acted without good faith, Defendant has failed to prove that it was an immediate or mediate transferee of the initial transferee, which is the threshold element of the affirmative defense under § 550(b). Instead, the evidence shows that Defendant was the initial transferee of the settlement proceeds at issue. Thus, even taking as true that Defendant took the Transfers for value, in good faith, and without knowledge of their avoidability, Defendant cannot escape liability under § 550 based on an affirmative defense under § 550(b).

Defendant argues in the alternative that Plaintiff is not entitled to a double recovery under § 550(d). Section 550(d) provides that "The trustee is entitled to only a single satisfaction under subsection (a) of this section." But this does not preclude the trustee from recovering the full value of the transfers. "Section 550(d) limits the trustee to a 'single satisfaction': no more and *no less*." *Dzikowski v. Northern Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.)*, 478 F.3d 1291, 1301 (11th Cir. 2007) (emphasis added); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 568 B.R. 481, 489

---

[5] To the extent an attorney retains its fees from settlement proceeds, those fees may be the subject of avoidance. However, there is no evidence that the funds transferred to Defendant included funds withheld by Montlick for its fees.

(Bankr. S.D.N.Y. 2017) ("Section 550(d) applies to limit a trustee's recovery in those situations where he sues multiple defendants to recover the value of the avoided initial transfer.").

In a separate § 549 adversary proceeding against Debtors' children and grandchildren, the Court entered a default judgment for Plaintiff (the "Goins AP"). [Gordon v. Goins, AP No. 17-5257, Doc. 12]. The Goins AP involves some, but not all, of the same vehicles at issue here, and it encompasses cash gifts not at issue in this proceeding.[6] While the judgment establishes liability for the transfers avoided in the Goins AP, there is no satisfaction until the Trustee has actually recovered the property or its value.

There is no evidence in the record regarding whether Plaintiff has obtained any recovery from the defendants in the Goins AP or how such recovery was allocated. To the extent this proceeding involves transfers not at issue in the Goins AP, there is no factual dispute regarding Defendant's liability under § 550(a). However, to the extent Plaintiff seeks to avoid the same transfers in both proceedings, Plaintiff cannot recover any amounts that may have been received from the defendants in the Goins AP for the vehicles in the First Transfer. Plaintiff's judgment for the First Transfer must be limited to the amount of the First Transfer less any amounts allocated to the First Transfer transactions received from defendants in the Goins AP.

Defendant further argues that it is entitled to recoup or set off against Plaintiff's recovery efforts under § 550(e) as a good faith transferee. Section 550(e) provides as follows:

> (e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

---

[6] In the Goins AP, Plaintiff avoided transfers of three 2008 Mercedes Benz C300s to Christopher Lee Goins, Cornelius Goins, and Andre Goins, and a Mercedes Benz C300 to Byron Goins. [Goins AP Doc. 12 at 3-4]. These appear to correspond with the vehicles that were purchased in the First Transfer. [McGhee Aff. ¶ 13]. In addition, in the Goins AP, Plaintiff avoided cash transfers to the Goins defendants totaling approximately $47,500. [Goins AP Doc. 12 at 3-4].

13

    (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
    (B) any increase in the value of such property as a result of such improvement, of the property transferred.
  (2) In this subsection, "improvement" includes—
    (A) physical additions or changes to the property transferred;
    (B) repairs to such property;
    (C) payment of any tax on such property;
    (D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and
    (E) preservation of such property.

In the McGhee Affidavit, Defendant makes various assertions about its costs to acquire, repair, and maintain the vehicles that were ultimately transferred in exchange for the settlement proceeds. [McGhee Aff. ¶ 19-20 & Ex. A]. However, the estate property at issue here was the settlement proceeds, not the vehicles. Furthermore, subsection (e) only applies when the transferee made improvements to the property *after* the transfer. The costs incurred by Defendant occurred prior to the Transfers. Accordingly, Defendant is not entitled to the benefit of § 550(e).

Defendant also argues that Plaintiff is precluded from a recovery against Defendant because Defendant is not an insider of Debtors. [Resp. at 13]. Section 550(c) prohibits the trustee from recovering from non-insiders if certain requirements are met. Those requirements include that the transfer occurred 90 days to one year prepetition, the transfer was avoided under § 547, and the transfer was made for the benefit of a creditor who was an insider. Here, the Transfers were made postpetition rather than during the applicable prepetition period, and the Transfers were avoided under § 549 rather than § 547. Accordingly, § 550(c) does not apply.

Finally, Defendant makes much of the undisputed fact that it is an innocent party to the Transfers. However, except as otherwise set forth in § 549 and § 550 and discussed above,

14

there is no innocent-transferee defense. *See Delco Oil*, 599 F.3d at 1263 ("Sections 549(a) and 550(a) by their terms contain no reference to, let alone an actual defense based on, the transferee's status (vendor, purchaser, etc.) or upon its state of mind (innocent, culpable, etc.)") In *Delco*, the court declined to create an exception for initial transferees of postpetition transfers of cash collateral when Congress had not done so. *Id.* Likewise, this Court cannot create an exception for Defendant.

Based on the foregoing, Plaintiff is entitled to summary judgment on Count II of the Complaint. With respect to the Second, Third, Fourth, and Fifth Transfers, Plaintiff may recover the property or its value from Defendant. With respect to the First Transfer, which is related to some of the transfers avoided in the Goins AP, Plaintiff's may recover the property or its value from Defendant less any amounts that have been collected from the defendants in the Goins AP for the vehicles in the First Transfer.

### C. Preservation of Transfers for the Estate

The Bankruptcy Code provides for preservation of avoided transfers as follows:

> Any transfer avoided under section ... 549 ... of this title ... is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551. Plaintiff has demonstrated the Transfers are avoidable under § 549. Accordingly, the transfers are automatically preserved for the benefit of the estate under § 551. Therefore, Plaintiff is entitled to summary judgment on Count III of the Complaint.

### D. Turnover

Plaintiff, having shown the Transfers at issue were of property of the estate, seeks turnover pursuant to § 542(a), which provides as follows:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control,

15

> during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Plaintiff has demonstrated that Defendant was in possession of property of the estate during the case. Plaintiff has further demonstrated that Defendant is liable for the property or the value of the property it received in the Second, Third, Fourth, and Fifth Transfers and liable for the property or the value of the property it received in the First Transfer except to the extent Plaintiff has recovered from the defendants in the Goins AP for the vehicles in the First Transfer. Accordingly, Plaintiff is entitled to summary judgment on Count IV of the Complaint.

**IV. Conclusion**

Plaintiff has shown all the Transfers at issue in this proceeding are avoidable as unauthorized postpetition transfers of property of the estate. Accordingly, Plaintiff is entitled to summary judgment on Counts I and III of the Complaint. Plaintiff has also shown that Defendant is liable for the property or its value with respect to the Second, Third, Fourth, and Fifth Transfers and liable for the property or its value less any prior recovery with respect to the First Transfer. Accordingly, Plaintiff is entitled to summary judgment on Counts II and IV of the Complaint subject to the limitations explained above. For the reasons set forth herein, it is

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED as to Counts I and III of the Complaint; it is further

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED as to Counts II and IV of the Complaint, with respect to the Second, Third, Fourth, Fifth Transfers; it is further

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED as to Counts II and IV of the Complaint, with respect to the First Transfer but that Defendant's liability and Plaintiff's recovery is reduced by the amount of any prior recovery Plaintiff received from the defendants in the Goins AP for the same vehicles in the First Transfer.

**END OF ORDER**

Document      Page 18 of 18

**Distribution List**

Neil C. Gordon
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

William D. Matthews
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

McGhee Auto Sales, Inc.
Clifford McGhee, Reg, Agt.
4414 Luxembourg Drive
Decatur, GA 30034

Albert A. Mitchell
3079 Campbellton Road
Suite 203
Altanta, GA 30311

Ivan Goins
6877 Tyree Road
Winston, GA 30187

Gabriella Elisabeth Gibbs
6877 Tyree Road
Winston, GA 30187

Jonathan A. Proctor
The Semrad Law Firm, LLC
303 Perimeter Center North, #201
Atlanta, GA 30346